## M. W. WOOD ENTERPRISES, INC.

v.

## UNITED STATES of America.

### Civ. A. No. 80–2080.

United States District Court,
E. D. Pennsylvania.

May 7, 1982.

Norman A. Piel, Jr., Easton, Pa., for plaintiff.

Dawn MacPhee, Asst. U. S. Atty., Philadelphia, Pa., Patricia Scott-Clayton, U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge:

In March 1972, plaintiff, M. W. Wood Enterprises, Inc., was incorporated pursu-

ant to Pennsylvania law and authorized to issue 50,000 shares of common stock and 50,000 shares of preferred, each with a $10.00 par value. The preferred stockholders, although generally not possessing any voting rights, are entitled to vote if plaintiff fails to pay dividends for a specified period of time. Plaintiff, upon its incorporation, was also authorized to issue debenture notes totaling $500,000. Each bond, bearing an interest rate of 6% per annum, is in the amount of $1,000 and callable by plaintiff ten years and one day after the date of its issuance. Additionally, should plaintiff default on interest payments on the notes for two consecutive years, each debenture holder is entitled to cast 100 votes per note on all questions upon which shareholders vote. Finally, upon corporate dissolution, the rights of debenture holders are superior to both classes of stockholders, but subordinate to general creditors.

Shortly after its incorporation plaintiff issued Milton W. Wood 50,000 shares of common and 50,000 shares of preferred stock; Mr. Wood also received 467 of plaintiff's $1,000 debt instruments. In exchange for the notes and stock issued to Mr. Wood, plaintiff received all 180 of the common shares of M. W. Wood, Inc., and all 150 shares of M. W. Catering Service, Inc.[1]

Defendant, United States, subsequently audited plaintiff and disallowed its interest payment deduction on the debenture notes and asserted that, in reality, such payments constituted a non-deductible preferential dividend paid to the debenture holders. Plaintiff subsequently paid the assessed tax and instituted this action for a refund. Both parties now move for summary judgment upon a record of stipulated facts. *See* Fed.R.Civ.P. 56.

Determination of the question whether interest paid by plaintiff on its 6% debenture bonds represents a non-deductible "preferential dividend" or actual indebtedness requires reference to the following factors, first articulated in *Fin Hay Realty Co. v. United States*, 398 F.2d 694, 696 (3d Cir. 1968) and further discussed in *Trans-Atlantic Co. v. Commissioner of Internal Revenue*, 469 F.2d 1189 (3d Cir. 1972):

(1) the intent of the parties; (2) the identity between creditors and shareholders; (3) the extent of participation in management by the holder of the instrument; (4) the ability of the corporation to obtain funds from outside sources; (5) the 'thinness' of the capital structure in relation to debt; (6) the risk involved; (7) the formal indicia of the arrangement; (8) the relative position of the obligees as to other creditors regarding the payment of interest and principal; (9) the voting power of the holder of the instrument; (10) the provision of a fixed rate of interest; (11) a contingency on the obligation to repay; (12) the source of the interest payments; (13) the presence or absence of a fixed maturity date; (14) a provision for redemption by the corporation; (15) a provision for redemption at the option of the holder; and (16) the timing of the advance with reference to the organization of the corporation.

Importantly, none of the factors are determinative and they are not all entitled to equal weight; rather, each case must turn upon an analysis of the specific facts at bar. In fact, the *Fin Hay* test merely serves as a guide to focus and delineate the Court's inquiry as it considers the "ultimate question [of] whether the investment, analyzed in terms of its economic reality, constitutes risk capital . . . or represents strictly a debtor-creditor relationship. *Fin Hay Realty Co. v. United States*, 398 F.2d at 697.

Plaintiff argues that the parties to the transaction intended to create a trust fund with a steady source of income for Mr. Wood's institutionalized son.[2] Temporarily

---

1. Mr. Wood had, prior to the above described transfer, been the sole common shareholder of M. W. Wood, Inc. and had owned all but one share of M. W. Wood Catering Services, Inc. His wife, Mrs. Jean Wood, had owned the one remaining share. She transferred it to plaintiff upon its issuance.

2. After acquiring the debenture notes, Mr. Wood transferred some of them to his son's trustee.

passing the question whether funding such a trust is a proper economic corporate undertaking, the Government persuasively argues that creation of a corporate debt for such purpose was unnecessary since plaintiff has always been a sound financial entity and that it did not need to create a debt to fund the trust.

The next two factors, identity of creditors and shareholders and the degree of management participation by the debenture holders, weigh heavily in favor of the Government. Mr. Wood owned 100% of M. W. Wood, Inc. and M. W. Wood Catering Services, Inc.,[3] before the creation of plaintiff. After plaintiff was created, Mr. Wood owned 100% of it, and through it he still controlled the two "related" Wood corporations.

The next two factors, the corporation's ability to obtain outside funds and the thinness of the capital structure in relation to the debt, weigh in favor of plaintiff. The undisputed facts are that plaintiff, at the time of the transaction, could have obtained funds from a local bank and that the corporate debt to equity ratio was in excess of two parts equity to one part debt. However, the weight which we place on these factors is minimized because plaintiff did not actually receive a cash infusion in exchange for the debt instruments. As such, its ability to obtain outside capital and the debt-equity ratio loses some importance since plaintiff did not apparently need or acquire any capital.

The risk involved is a neutral factor. True, by subordinating the notes to general creditors, noteholders, arguably, faced some risk. However, plaintiff's sound financial condition, coupled with the critical fact that debenture holders failed to actually transfer capital to the corporation, compels the conclusion that the risk involved is neutral.

The formal indicia of the arrangement, the next factor, favors plaintiff. There is no argument that appropriate formalities were observed in creating the debentures. Where, as here, a corporation is closely held, the formalities of the debt instrument may lose some importance as "form does not necessarily correspond to the intrinsic economic nature of the transaction". *Fin Hay Realty Co. v. United States*, 398 F.2d at 697.

The eighth *Fin Hay* factor, the relative position of the obligees to other corporate creditors regarding the payment of interest and principal, weighs in favor of defendant since rights of debenture holders are subordinate to all other creditors.

The voting rights of the noteholders, the next factor, is not strongly implicated in the case at bar as no such rights exist absent a default on the payment of interest.

Our inquiry next turns to the provision for a fixed rate of interest and the plaintiff's obligation to repay the debt. The bonds yield interest at the fixed rate of 6% per annum. Importantly, however, they have no maturity date. Hence, their holders can never force plaintiff to redeem them.

The source of the interest payments, the next point which we consider, weighs in favor of plaintiff as they are made directly from corporate funds.

As previously noted, there is no fixed maturity date for the bonds; plaintiff may redeem them *at its sole option* any time after ten years and one day from their date of issuance. Hence, *Fin Hay's* thirteenth through fifteenth factors, tip in favor of defendant.

The sixteenth factor, the timing of the advance, is neutral, favoring neither plaintiff nor defendant.

Upon a careful weighing of all the above factors, we believe that the structure of the transaction indicates that, under an "objective test of economic reality", an outside lender would not have assented to these terms. *Fin Hay Realty Co. v. United*

---

**3.** Mr. Wood's ownership of M. W. Wood Catering Services, Inc. was virtually complete when plaintiff was formed. *See* n. 1.

*States*, 398 F.2d at 697. As such, we grant defendant's motion for summary judgment and deny plaintiff's.